OPINION
{¶ 1} Appellant, Grange Mutual Insurance Company ("Grange Mutual"), appeals from a final judgment of the Geauga County Court of Common Pleas, certifying this case as a class action. As will be discussed, this matter has an extended appellate history with two prior appeals to this court. For the reasons that follow, we affirm.
 {¶ 2} Prior to 1994, insurance companies in Ohio included in their policies a provision that excluded coverage for bodily injury to a person occupying or struck by a vehicle owned by the insured, but not named in the policy. In Martin v. MidwesternGroup Ins. Co., 70 Ohio St.3d 478, 1994-Ohio-407, paragraph three of the syllabus, the Supreme Court of Ohio invalidated these provisions when it held that "[a]n automobile insurance policy provision which eliminates uninsured motorist coverage for persons insured thereunder who are injured while occupying a motor vehicle owned by an insured, but not specifically listed in the policy, violates R.C. 3937.18 and is therefore invalid." However, effective September 13, 1997, the General Assembly amended R.C. 3937.18 to permit these "other owned vehicle" exclusions.
 {¶ 3} Based on the Supreme Court's decision in Martin,
appellees, Barbara and Gerald Martin ("the Martins"), for themselves and on behalf of all others similarly situated, filed a complaint against Grange Mutual on May 12, 1998. In their complaint, the Martins alleged that Grange Mutual had continued to collect multiple premiums for uninsured/underinsured coverage without informing policyholders of Martin. Specifically, the Martins maintained that, per Martin, only one vehicle in a household was required to have uninsured/underinsured motorist coverage to provide such protection to all resident relatives living in the household.
 {¶ 4} As a result, the Martins submitted the following claims for relief: (1) breach of contract; (2) breach of fiduciary duty; (3) misrepresentation and fraud predicated on a failure to disclose; (4) negligence; (5) conversion; and (6) unjust enrichment. The Martins also sought declaratory relief with respect to their rights, liabilities, and obligations under the insurance contract. They later amended their complaint to have the case certified as a class action under Civ.R. 23 to include every policyholder in Ohio that had paid multiple premiums for uninsured/underinsured motorist coverage subsequent to the date the Supreme Court of Ohio decided Martin.
 {¶ 5} After submitting an answer, Grange Mutual filed a motion for summary judgment in which the company maintained that: (1) Martin did not prohibit insurance companies from charging premiums for uninsured/underinsured motorist coverage based on the number of vehicles owned by an insured; (2) there was an increased risk and increased coverage associated with including uninsured/underinsured motorist coverage on subsequent vehicles owned by an insured; and (3) Savoie v. Grange Mut. Ins. Co.
(1993), 67 Ohio St.3d 500, implicitly approved charging multiple premiums for multiple policies containing uninsured/underinsured motorist coverage to family members living in the same household.
 {¶ 6} The Martins responded by acknowledging that it was not illegal for Grange Mutual to charge multiple premiums for each vehicle for uninsured/underinsured motorist coverage. Nevertheless, the Martins asserted that Grange Mutual "breached a duty or committed misrepresentation with respect to how it provided and represented multiple, simultaneously effective [policies] to its insureds by creating the misimpression that the coverage had such value to them, when in fact it did not."
 {¶ 7} The trial court issued a decision on October 12, 1999, granting Grange Mutual summary judgment on all claims. In doing so, the trial court concluded that Grange Mutual had no legal duty to inform its insureds of Martin. As a result, the failure to notify did not constitute a "breach of contract, breach of fiduciary duty, misrepresentation and fraud, negligence, or conversion."
 {¶ 8} The Martins appealed the trial court's decision. On appeal, they argued that summary judgment was not appropriate because even if Grange Mutual was not, as a matter of law, required to inform policyholders of Martin, the trial court went too far in finding that there was no genuine issue of material fact with respect to their claims.
 {¶ 9} After considering the parties' respective positions, we concluded that Grange Mutual did not have a legal obligation to inform policyholders of either Martin or the corresponding effect of the decision on their insurance policies. Martin v.Grange Mut. Ins. Co. (2001), 143 Ohio App.3d 332, 338. However, this court also concluded that even if an insurance company had no legal duty to keep policyholders informed, an insurance company may obligate itself to advise policyholders through prior practices. Id. at 339. Stated differently, "if an insurance company has taken steps in the past to notify insureds of changes in the law bearing on coverage or some other term of a policy, the company may then be required to instruct policyholders on further reforms." Id.
 {¶ 10} Because Grange Mutual failed to address this issue in its motion for summary judgment, we held that it did not meet its burden of demonstrating a lack of genuine issue of material fact with regard to the complaint's claims. Id. at 339-340. Accordingly, the judgment of the trial court was affirmed in part, reversed in part, and the matter was remanded for further proceedings consistent with our opinion. The issue on remand no longer included the question of whether Grange Mutual had a legal duty, per se, to inform its policyholders of Martin. Rather, the sole remaining issue was whether Grange Mutual obligated itself through its prior conduct to notify policyholders ofMartin.
 {¶ 11} Subsequently, the parties engaged in further discovery. Grange Mutual then requested leave to file a renewed motion for summary judgment, while the Martins filed a motion to certify the matter as a class action.
 {¶ 12} The trial court denied Grange Mutual's request for leave and granted the Martins' request for class certification by finding that the prerequisites of Civ.R. 23 had been met. The class included "All Grange named insureds, who from October 5, 1994, through September 2, 1997, for any period of time were charged multiple premiums on the line `UM coverage' (i.e., a premium after the first vehicle)." The court further stated, "Excluded from the class are ses [sic] and any of their officers, employees, or agents."
 {¶ 13} Grange Mutual filed a timely appeal, contesting both the trial court's denial of its request for leave to file a renewed motion for summary judgment as well as the grant of class certification. We affirmed the court's denial of Grange Mutual's request to file a renewed motion for summary judgment. Martin v.Grange Mut. Ins. Co., 11th Dist. Nos. 2002-G-2473 and 2002-G-2479, 2003-Ohio-4869. Nevertheless, we reversed the trial court's decision pertaining to class certification. Id. at ¶ 33. In short, we held that adequate appellate review was precluded because of the court's failure to make separate written findings with respect to the prerequisites of class certification. Id. at ¶ 32. Thus, we instructed the trial court "to clarify its judgment by providing its reasons for granting class certification, given the requirements of Civ.R. 23 and the evidence already in the record." Id. at ¶ 33.
 {¶ 14} Upon remand, the court issued a January 12, 2004 judgment entry which clarified and detailed, pursuant to Civ.R. 23, its previous judgment. The court's findings supported its previous judgment entry which granted the Martins' class certification.
 {¶ 15} From this decision, Grange Mutual filed a timely notice of appeal with this court and now submits the following assignment of error for our consideration:
 {¶ 16} "The trial court erred in granting class certification."
 {¶ 17} When deciding whether to certify a class action, a trial court is given broad discretion. In re Consol. Mtge.Satisfaction Cases, 97 Ohio St.3d 465, 2002-Ohio-6720, at ¶ 5. Therefore, a trial court's decision to grant certification of a class action will not be disturbed absent an abuse of that discretion. Id. An abuse of discretion connotes more than a mere error of law or judgment; instead, it implies that the court's decision was unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 18} Under Civ.R. 23, seven prerequisites must be met before a court may certify a case as a class action:
 {¶ 19} "(1) an identifiable class must exist and the definition of the class must be unambiguous; (2) the named representatives must be members of the class; (3) the class must be so numerous that joinder of all members is impractical; (4) there must be questions of law or fact common to the class; (5) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; (6) the representative parties must fairly and adequately protect the interests of the class; and (7) one of the three Civ.R. 23(B) requirements must be satisfied." In re Consol. Mtge.Satisfaction Cases at ¶ 6.
 {¶ 20} Under its sole assignment of error, Grange Mutual argues that the mandatory prerequisites of Civ.R. 23 have not been met. Specifically, Grange Mutual submits contentions regarding the following four prerequisites: (1) the typical claims requirement; (2) the adequacy of the class representatives; (3) the requirements of Civ.R. 23(B)(3); and (4) the identity of the class.
 {¶ 21} Grange Mutual first argues that class certification was improper because the claims of the class representatives, the Martins, were not typical of the class members. In doing so, Grange Mutual sets forth a hypothetical evaluation demonstrating the practical effect of Martin on the premiums of individual policyholders. Based upon this evaluation, Grange Mutual determined that premiums would vary and the Martins, as class representatives, perhaps would have paid a higher or lower premium compared to the other class members. Accordingly, Grange Mutual concludes that the Martins' damages would differ from those of the class members and, therefore, the Martins' claims are atypical. We disagree.
 {¶ 22} Civ.R. 23(A)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class[.]" As a distinct prerequisite to class certification, typicality must be independently satisfied.Hamilton v. Ohio Sav. Bank, 82 Ohio St.3d 67, 78, 1998-Ohio-365. Generally, the requirement of typicality protects absent class members and promotes the economy of class actions by ensuring that the interests of the named representatives are substantially aligned with those of the class. Baughman v. State Farm Mut.Auto Ins. Co., 88 Ohio St.3d 480, 484, 2000-Ohio-397.
 {¶ 23} A representative's claim is typical "`if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory. When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims.'" Id. at 487, quoting 1 Newberg on Class Actions (3 Ed. 1992) 3-74 to 3-77, Section 3.13. Accordingly, absent a serious discrepancy between the position of the representatives and that of the class, the focus of typicality should remain on the essential conforming characteristics of the defendant's actions and the claims arising therefrom. Baughman at 488.
 {¶ 24} In the case sub judice, the trial court's judgment entry stated, "[t]here are common issues of law and fact among the members of the proposed class * * *." The court further noted, "[t]he pecuniary interest of [the Martins] would be the same as that of other members of the proposed class, refund of premiums."
 {¶ 25} Our examination of the actions which gave rise to the Martins' claims confirms that these same actions also gave rise to the class members' claims. Each claim was predicated upon common evidence relating to Grange Mutual's failure to disclose legal information, thereby allowing Grange Mutual to charge additional premiums for uninsured/underinsured motorist coverage. The Martins' claims arise from the same alleged wrongful practice and course of conduct that forms the claims of the entire class. See, e.g., Baughman at 488. Furthermore, the Martins' claims are based upon the same legal theories of the other class members. Id.
 {¶ 26} In particular, both the Martins and the class will rely not only upon the same policy provisions, but also upon any evidence of Grange Mutual's failure to inform policyholders of the holding in Martin, as well as any evidence demonstrating any prior practice by Grange Mutual of advising policyholders of changes in the law effecting policy coverage. Because both the Martins and the class members would rely upon identical evidence to support their claims, the adjudication of such claims would necessarily determine Grange Mutual's liability to the class generally. See, e.g., Baughman at 485. Thus, the Martins' claims are typical of the class.
 {¶ 27} Moreover, the Supreme Court of Ohio has stated, "`a trial court should not dispose of a class certification solely on the basis of disparate damages.'" Hamilton at 81, quotingOjalvo v. Ohio State Univ. Bd. of Trustees (1984),12 Ohio St.3d 230, 232. There are, however, certain specific instances in which the calculation of damages would be so burdensome or complex that a trial court may deny certification. Hamilton at 81. Such circumstances are not present when damages can be mathematically calculated. Id. at 82.
 {¶ 28} Here, Grange Mutual's argument, that a possible disparity exists between the Martins' damages and the class members' damages, is based upon various presumptions of fact. The record before us establishes that each class member's damages could be mathematically calculated by determining the multiple premiums paid by the individual class member from October 5, 1994, through September 2, 1997. Thus, the court could easily and quickly determine the exact amount due each class member without the presentation of additional evidence from every individual of the class. See, e.g., Hamilton. Here, the issue of disparate damages does not preclude class certification.
 {¶ 29} We find no abuse of discretion in the trial court's determination that the typicality requirement was satisfied. This portion of appellant's assignment of error is not well-taken.
 {¶ 30} Next, Grange Mutual argues that the trial court inappropriately granted class certification because the Martins cannot adequately represent the class due to antagonistic and competing interests held by different subsets of the class. In support of this contention, Grange Mutual points to varying characteristics between the class members and the Martins which allegedly create this inadequacy. Namely, Grange Mutual maintains that the class, as defined by the court, would include individual members whose claims and economic interests differ from that of the Martins, thereby creating unique defenses among the representatives and the class members.
 {¶ 31} These unique defenses are predicated upon the following: (1) varying economic interests between the class members;[1] (2) various class members who were actually aware of the Martin decision despite Grange Mutual's failure to inform; and (3) certain members of the class who desired to purchase additional premiums of uninsured/underinsured motorist coverage for the protection of passengers who are not family members.
 {¶ 32} The language of Civ.R. 23(A)(4) states, "the representative parties will fairly and adequately protect the interests of the class." This requirement is divided into a consideration of the adequacy of the representatives and the adequacy of counsel. Marks v. C.P. Chemical Co., Inc. (1987),31 Ohio St.3d 200, 203. As Grange Mutual does not challenge the adequacy of counsel, our review is focused solely upon the adequacy of the representatives.
 {¶ 33} "A representative is deemed adequate so long as his interest is not antagonistic to that of other class members." Id. A unique defense will not destroy adequacy of representationunless it is so central to the litigation that it threatens topreoccupy the class representative to the detriment of the otherclass members. Hamilton at 453. The trial court's judgment entry stated, "[the Martins] have not been shown to have any interests that would conflict with the interests of any other members of the proposed class."
 {¶ 34} We note that Grange Mutual has failed to present any evidence to substantiate its allegations that the Martins' interests conflict with the class members' interests. To the contrary, Grange Mutual provides nothing more than mere assumptions regarding the class members' economic interests, awareness of Martin, and intent to purchase additional uninsured/underinsured motorist coverage. No policyholder has set forth any evidence that would establish the veracity of Grange Mutual's assumptions. Thus, at this stage, any attempt on our part to evaluate the existence, nature, or extent of unique defenses affecting the class would rest on pure speculation.
 {¶ 35} Moreover, nothing in the record before us demonstrates that Grange Mutual's assumptions would create a unique defense so central to the litigation that it threatens to preoccupy the Martins to the detriment of the other class members. The class members' economic interests, awareness of Martin, and intent to purchase additional uninsured/underinsured motorist coverage are not determinative of the paramount common question between the class members and the representatives; namely, whether Grange Mutual's prior conduct required it to inform the class members ofMartin's effect on their policies. Thus, we find no abuse of discretion in the trial court's determination of adequacy. This portion of appellant's assignment of error is without merit.
 {¶ 36} Grange Mutual further contends that the class should not have been certified under Civ.R. 23(B)(3). Specifically, Grange Mutual alleges the existence of policyholders who choose to carry additional uninsured/underinsured motorist coverage to protect non-family member passengers and policyholders who were actually aware of the Martin decision. In doing so, Grange Mutual attempts to establish the presence of individualized defenses that would apply only to certain subsets of class members. Grange Mutual argues that these individualized defenses show there are no predominant common questions of law or fact among the entire class, as a separate analysis of the facts relating to each class member would be necessary.
 {¶ 37} Likewise, Grange Mutual maintains that a class action is not the superior method of adjudication. In short, Grange Mutual asserts that the claims and defenses of each class member will be unique and, therefore, a class action would be inefficient and difficult to manage.
 {¶ 38} Civ.R. 23(B)(3) provides that a class action is proper if, in addition to the prerequisites of subdivision (A) being met, "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."
 {¶ 39} The Supreme Court of Ohio has held that a claim will meet the predominance requirement "`when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position.'" Cope v. Metro LifeIns. Co., 82 Ohio St.3d 426, 429-430, 1998-Ohio-405, quotingLockwood Motors, Inc. v. Gen. Motors Corp. (D.Minn. 1995),162 F.R.D. 569, 580. Generally, trial courts have found that a defendant's common misrepresentation eliminates the necessity to procure individual testimony as to each element of the alleged fraud or misrepresentation, especially when the misrepresentation or omission is written. Cope at 430. "They recognize that when a common fraud is perpetrated on a class of persons, those persons should be able to pursue an avenue of proof that does not focus on questions affecting only individual members." Id.
 {¶ 40} Again, resolution of the claims of the entire class turns upon whether Grange Mutual, through its prior actions, obligated itself to inform policyholders of the relevant legal changes imposed by Martin. Clearly, the entire class could rely upon generalized, written evidence of Grange Mutual's prior communications with policyholders to demonstrate a pattern of conduct which obligated Grange Mutual to inform its policyholders of the Martin decision. As described by the trial court in its judgment entry, such generalized, written evidence includes "documents, advertising, policy addenda, etc provided by [Grange Mutual] to all members of the proposed class." Thus, there would be no need to examine each individual class member's position, and predominant questions of law or fact are present.
 {¶ 41} Despite the existence of generalized, written evidence, Grange Mutual maintains that the varying characteristics of the class members create individualized defenses which destroy the predominant common questions of law or fact. First, Grange Mutual contends that certain members of the class have chosen to pay the additional uninsured/underinsured motorist coverage to protect non-family member passengers. Grange Mutual also argues that select members of the class were actually aware of the Martin decision. Thus, Grange Mutual concludes that these distinct class members would be subject to unique defenses which would preclude them from succeeding on their claims.
 {¶ 42} The Supreme Court of Ohio has been called upon to determine a class certification almost identical to the instant case. In Baughman, State Farm Insurance Company ("State Farm") contested the certification of a class which claimed State Farm had committed a misrepresentation by failing to inform the class members of the Martin decision.[2] In particular, State Farm posited that the predominance requirement of Civ.R. 23(B)(3) had not been satisfied because "individual proof [was] necessary to determine whether each class member, regardless of his or her knowledge of Martin, would have purchased uninsured/underinsured motorist coverage on multiple vehicles anyway, since separate coverage provides the additional benefit of protecting passengers." Id. at 490. Also, State Farm suggested, "individual determinations must be made as to whether each class member was aware of the change in law brought about byMartin, either by virtue of having been told by State Farm's agents or having acquired such information independently." Id.
 {¶ 43} Ultimately, the Court reasoned that it was not necessary for the class members to establish inducement or reliance upon material omissions by direct evidence. Id. Rather, "[w]hen there is nondisclosure of a material fact, courts permit inferences or presumptions of inducement and reliance. Thus, cases involving common omissions across the entire class are generally certified as class actions, notwithstanding the need for each class member to prove these elements." Id. Accordingly, the Court held, "if [the class members] can establish by common proof and/or form documents that State Farm misrepresented the validity of the other-owned vehicle exclusion, or that State Farm was required and failed to disclose the effect of Martin, then at least a presumption of reliance would arise as to the entire class, thereby obviating the necessity for individual proof on this issue." (Emphasis added.) Id. at 491.
 {¶ 44} Here, like Baughman, the common issue across the entire class is whether Grange Mutual was obligated to notify the class members of Martin. To establish this obligation, the class will rely upon common proof and form documents which demonstrate Grange Mutual's prior conduct. This evidence will undoubtedly form the basis of the claims for the whole class. Thus, a presumption of reliance arises.
 {¶ 45} Although Grange Mutual contends that certain class members are subject to individualized defenses, it fails to provide any evidence corroborating this contention. Instead, it relies upon the assumptions that certain class members would have paid the additional premiums regardless of the Martin
decision and that certain class members were actually aware of the decision. Because Grange Mutual has failed to present any corroborative evidence in support of its contentions, the presumption of the class members' reliance remains. Grange Mutual's contentions with respect to the predominance requirement of Civ.R. 23(B)(3) are not well-taken.
 {¶ 46} Grange Mutual further argues that a class action is not the superior method of litigation, as the unique defenses of the class members would render the class inefficient and difficult to manage.
 {¶ 47} The general purpose of the superiority requirement under Civ.R. 23(B)(3) is to bring within the parameter of maintainable class actions "cases in which the efficiency and economy of common adjudication outweigh the interest of individual autonomy." Hamilton at 80. "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." Mace v. Van Ru Credit Corp.
(C.A.7, 1997), 109 F.3d 338, 344.
 {¶ 48} The existence of unique defenses and factual issues is part of the court's consideration of the superiority requirement under Civ.R. 23(B)(3). See, e.g., Hamilton. However, as mentioned previously, Grange Mutual has failed to present any corroborative evidence of the unique, individualized defenses it claims are present. Thus, Grange Mutual has failed to demonstrate that such unique defenses would render the class action inefficient or unmanageable.
 {¶ 49} We further note that although individual defenses are admittedly a concern, the trial court has wide discretion in applying various procedural devices used to manage a class action, including: the creation of appropriate subclasses, bifurcation of common and individual liability issues, or severance. See, e.g., Lowe v. Sun Refining Marketing Co.
(1992), 73 Ohio App.3d 563. These devices allow the court to maintain a class action in an efficient manner despite the existence of unique defenses.
 {¶ 50} Nevertheless, Grange Mutual has failed to demonstrate a unique defense which would render the class action less superior to other forms of litigation. Rather, proceeding as a class in the case at bar allows a large number of plaintiffs to aggregate their resources, thereby providing the incentive to proceed with litigation. Grange Mutual's contentions regarding the superiority requirement of Civ.R. 23(B)(3) are not well-taken.
 {¶ 51} The foregoing has established that the trial court did not abuse its discretion by granting class certification under Civ.R. 23(B)(3). Thus, this portion of Grange Mutual's assignment of error is not well-taken.
 {¶ 52} Finally, Grange Mutual contends that the trial court failed to define the class in a clear and unambiguous manner. Grange Mutual's specific contention is based upon a typographical error which is part of the exclusionary provision of the class definition.
 {¶ 53} "[T]he requirement that there be a class will not be deemed satisfied unless the description of it is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member."Hamilton at 71-72. As a result, the class definition must be precise enough to permit identification with a reasonable effort.Petty v. Wal-Mart Stores, Inc., 148 Ohio App.3d 348,2002-Ohio-1211, at ¶ 12.
 {¶ 54} In its September 18, 2002 judgment entry, the court defined the class as follows:
 {¶ 55} "All Grange named insured, who from October, 1994 through September 2, 1997, for any time period were charged multiple premiums on the line `UM coverage' (i.e., premium after the first vehicle).
 {¶ 56} "Excluded from the class are ses [sic] and any of their officers, employees, or agents." (Emphasis added.)
 {¶ 57} The term "ses" was indecipherable and, within the context of the exclusionary provision, precluded a precise enough class definition to permit identification with a reasonable effort. Accordingly, following our hearing on appeal, we remanded this matter for twenty days to allow the trial court to clarify or correct the term "ses."
 {¶ 58} On November 10, 2004, the trial court issued a nunc pro tunc judgment entry which corrected the language of the exclusionary provision to read as follows:
 {¶ 59} "Excluded from the class are Defendant and any of its officers, employees, or agents."
 {¶ 60} The trial court's correction has alleviated the ambiguity created by the typographical error. Accordingly, the class definition is sufficiently definite to determine whether a particular individual is a member. This portion of Grange Mutual's assignment of error is not well-taken.
 {¶ 61} Based upon the foregoing analysis, appellant's assignment of error is without merit. Therefore, the trial court's judgment entry certifying this matter as a class action is hereby affirmed.
Ford, P.J., O'Neill, J., concur.
[1] In particular, Grange Mutual argues that the class as certified would include certain class members whose policy coverage was only in effect "for a day or week" after theMartin decision. Accordingly, appellant concludes that the economic interest of these individual class members would be "virtually zero."
[2] In Baughman, the class members presented six claims for relief which were strikingly similar to the claims of the case sub judice. The Baughman claims included fraud, conversion, unjust enrichment, breach of implied covenant or duty of good faith and fair dealing, and the return of insurance premiums based on a failure to disclose.