OPINION
{¶ 1} Appellants, The Penn Central Corporation and its successor American Premier Underwriters, Inc. (collectively "Penn Central"), appeal from a judgment entry of the Trumbull County Court of Common Pleas, certifying this matter as a class action. For the reasons that follow, we reverse the judgment of the trial court and remand this matter for further proceedings.
 {¶ 2} By way of background, Penn Central and its predecessors acquired multiple right-of-way land easements across Ohio to construct and operate railroads. In 1970, Penn Central filed a petition for reorganization under Section 77 of the Federal Bankruptcy Act. As a result of this petition, and the financial plight of other railroad operators, Congress enacted the Regional Rail Reorganization Act of 1973 ("RRRA"). The RRRA created the Consolidated Rail Corporation ("Conrail") and conveyed a majority of Penn Central's assets to Conrail.
 {¶ 3} On April 1, 1976, pursuant to a bankruptcy court order, the majority of Penn Central's rail properties designated in a "Final System Plan" were conveyed to Conrail. Following this order, Penn Central had no authority to operate a railroad or resume the operation of a railroad, as that authority was transferred to Conrail.
 {¶ 4} Despite the cessation of railroad operations, in 1978, Penn Central initiated what was entitled the "asset-disposition-program." The asset-dispositionprogram attempted to raise revenue by selling Penn Central's purported interest in any right of way accumulated and formerly used by Penn Central for transportation purposes. For instance, Penn Central conducted auctions to sell its alleged ownership interest in the unused easements.
 {¶ 5} In 1997, Paula D. Maas and Steven D. Maas (collectively "the Maases") received a form letter from Penn Central notifying them that an auction would be held to sell the right-of-way corridor that was adjacent to and traversed their land. Penn Central also posted signs along this right-of-way corridor advertising the auction. The Maases challenged Penn Central, claiming ownership of the right-of-way corridor. Although the Maases were successful in preventing the auction, Penn Central refused to issue a release clarifying the Maases' ownership of the right-of-way corridor.
 {¶ 6} Like the Maases, Deborah L. Johlin-Bach and Gary W. Bach (collectively "the Bachs") owned land adjacent to a right-of-way corridor previously used by Penn Central. Penn Central ultimately sold the right-of-way corridor to the Sandusky County Parks District.
 {¶ 7} On April 15, 1999, the Maases and the Bachs (collectively "appellees") filed a complaint in the Trumbull County Court of Common Pleas, on behalf of themselves and all others similarly situated, naming Penn Central and American Financial Group, Inc., as defendant parties. Appellees' complaint requested class certification and set forth the following claims: (1) slander of title; (2) unjust enrichment; (3) theft; (4) securing writings by deception; (5) trespass; and (6) a declaratory judgment declaring appellees' ownership interest in the easements. The basis of these claims was that, under Ohio law, as contended by appellees, a railroad operator's ownership interest in a right-of-way easement is extinguished when the land ceases to be used for railroad purposes. Thus, appellees concluded that the ownership interest in the right-ofway easements reverted to the adjacent and underlying landowners.
 {¶ 8} With respect to class certification, the complaint stated as follows:
 {¶ 9} "The named Plaintiffs represent a Class consisting of all persons who own or have owned land in the State of Ohio at all relevant times next to or over which Penn Central or its predecessors either had a right of way for railroad purposes that is no longer used for those purposes or owned a qualified estate that terminated upon discontinuation of railroad operations and who have a right to clear title to the abandoned right of way or terminated estate."
 {¶ 10} Penn Central filed a timely answer, and the parties proceeded to engage in discovery. On September 15, 2000, appellees filed a motion for class certification and a memorandum in support. Appellees' memorandum in support maintained that there existed a certifiable class pursuant to Civ.R. 23. Moreover, the memorandum asserted that class certification was the most efficient and suitable method to bring forth the aforementioned claims.
 {¶ 11} On October 31, 2000, Penn Central filed a memorandum in opposition to appellees' motion for class certification. In its memorandum in opposition, Penn Central argued that appellees' six claims were not appropriate for a class action lawsuit, as each claim would require an individualized analysis of the separate class members. Penn Central further maintained that the class did not meet the commonality, typicality, and adequacy requirements under Civ.R. 23(A). Also, Penn Central concluded that class certification was inappropriate because the primary focus of the lawsuit was monetary damages, and because the class failed to meet the predominance and superiority requirements under Civ.R. 23(B)(2).
 {¶ 12} Appellees' motion for class certification proceeded to a hearing before the court on October 10, 2001. During the hearing, the Maases and Bachs provided testimony which established the proximity of their land in relation to the right-of-way corridors and disclosed the factual events that resulted in the complaint claims.
 {¶ 13} Following the hearing, the parties' submitted proposed findings of fact and conclusions of law with the court. On March 21, 2003, appellees filed a motion for leave to amend the class action complaint. Specifically, appellees sought leave to revise a portion of their declaratory judgment claim to exclude those individuals who purchased property from Penn Central from becoming a class member. Thus, only those underlying and adjacent landowners could join the class.
 {¶ 14} On August 8, 2003, the trial court issued a judgment entry which granted appellees' motion for leave to amend the complaint and certified this matter as a class action. The court determined that this matter was to be maintained as a class action under Civ.R. 23(B)(2), as to the claims for declaratory and injunctive relief, and under Civ.R. 23(B)(3), as to all other claims. The Bachs and the Maases were the designated representatives of the class with respect to all claims except the claim for slander of title; only Steven D. Maas was designated as the representative for the slander of title claim. Finally, the court defined the class as follows:
 {¶ 15} "All persons, other than the United States government or the government of any state, who own or, between April 1, 1976, and the present have owned land in the State of Ohio underlying or adjacent to a railroad right-of-way corridor on which Penn Central or its predecessors in interest operated a railroad and that has not been used for railroad purposes since April 1, 1976."
 {¶ 16} From this judgment, Penn Central filed a timely notice of appeal and now sets forth the following four assignments of error:
 {¶ 17} "[1.] The Class Certification Order must be reversed pursuant to this court's decision in Martin v. Grange Mutual Ins. Co.
 {¶ 18} "[2.] The trial court erred and abused its discretion in certifying the class because the requirements for class certification are not met.
 {¶ 19} "[3.] The trial court erred and abused its discretion in certifying the class because the class fails to satisfy the requirements of Civ.R. 23(A).
 {¶ 20} "[4.] The trial court erred and abused its discretion in granting class certification under Civ.R. 23(B) because the class does not satisfy any of the three requirements of that rule."
 {¶ 21} At the outset, we note that a judgment granting a party class action certification is a final appealable order that must be appealed within thirty days of its issuance. Dayton Women's Health Ctr. v. Enix
(1990), 52 Ohio St.3d 67, syllabus. Therefore, the issue of class certification is properly before this court.
 {¶ 22} Under its first assignment of error, Penn Central argues that the trial court erred in failing to provide specific reasons for granting class certification. Penn Central's argument is predicated upon our recent decision in Martin v. Grange Mut. Ins. Co., 11th Dist. Nos. 2002-G-2473 and 2002-G-2479, 2003-Ohio-4869. Penn Central contends that because the trial court "failed to find even in a conclusory manner that each of the prerequisites for class certification was met[,]" this matter must be reversed and remanded. We agree.
 {¶ 23} When deciding whether to certify a class action, a trial court is given broad discretion. In re Consol. Mtge. Satisfaction Cases,97 Ohio St.3d 465, 2002-Ohio-6720, at ¶ 5. Therefore, a trial court's decision to grant certification of a class action will not be disturbed absent an abuse of that discretion. Id. An abuse of discretion connotes more than a mere error of law or judgment; instead, it implies that the court's decision was unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 24} Under Civ.R. 23, seven prerequisites must be met before a court may certify a case as a class action:
 {¶ 25} "(1) an identifiable class must exist and the definition of the class must be unambiguous; (2) the named representatives must be members of the class; (3) the class must be so numerous that joinder of all members is impractical; (4) there must be questions of law or fact common to the class; (5) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; (6) the representative parties must fairly and adequately protect the interests of the class; and (7) one of the three Civ.R. 23(B) requirements must be satisfied." In re Consol. Mtge. Satisfaction Cases at ¶ 6.
 {¶ 26} In Martin, the trial court's judgment entry merely listed the prerequisites of Civ.R. 23 and stated that each had been satisfied. Id. at ¶¶ 11-18. This court reversed the trial court's class certification inMartin because we were unable "to conclude, from examining the record and the appealed judgment entry, whether or not the trial court carefully applied the class action requirements and conducted a rigorous analysis into whether they were satisfied." Id. at ¶ 32.
 {¶ 27} Our holding in Martin was based upon Hamilton v. Ohio Sav.Bank, 82 Ohio St.3d 67, 70, 1998-Ohio-365. In Hamilton, the Ohio Supreme Court further defined the trial court's role in determining class action certification when it noted that a court's discretion is not unlimited. Rather, "[t]he trial court is required to carefully apply the class action requirements and conduct a rigorous analysis into whether the prerequisites of Civ.R. 23 have been satisfied." Id. Furthermore:
 {¶ 28} "While there is no explicit requirement in Civ.R. 23 that the trial court make formal findings to support its decision on a motion for class certification, there are compelling policy reasons for doing so. Aside from the obvious practical importance, articulation of the reasons for the decision tends to provide a firm basis upon which an appellate court can determine that the trial court exercised its discretion within the framework of Civ.R. 23, and discourages reversal on the ground that the appellate judges might have decided differently had they been the original decision makers. On the other hand, the failure to provide an articulated rationale greatly hampers an appellate inquiry into whether the relevant Civ.R. 23 factors were properly applied by the trial court and given appropriate weight, and such an unarticulated decision is less likely to convince the reviewing court that the ruling was consistent with the sound exercise of discretion." (Citations omitted.) Hamilton at 70-71.
 {¶ 29} Although formal findings are not required, "[i]t is exceedingly difficult to apply an abuse-of-discretion standard to Civ.R. 23 determinations where, * * * the trial court fails not only to articulate its rationale, but also fails to disclose which of the seven class action prerequisites it found to be lacking with respect to the various alleged claims for relief." Hamilton at 71. Thus, the Court suggested "that in determining the propriety of class certification under Civ.R. 23, trial courts make separate written findings as to each of the seven class action requirements, and specify their reasoning as to each finding." Id. at 71. See, also, Isaak v. Trumbull Sav. Loan Co. (Aug. 4, 2000), 11th Dist. No. 99-T-0077, 2000 WL 1114830, at 2, (following Hamilton).
 {¶ 30} Notwithstanding the trial court's failure to provide or articulate any reasoning for its certification of the class, appellees argue that the instant case is distinguishable from Martin. In doing so, appellees note that, unlike Martin, the trial court in the case sub judice had the benefit of detailed briefs and a hearing on the motion for class certification. Thus, appellees conclude, "although the decision below granting class-certification was unaccompanied by formal findings, the record before the trial court supports it."
 {¶ 31} Appellees' reliance upon a voluminous record detailing the parties' arguments is misplaced. The arguments and evidence which were presented by the parties, and are part of the record, are irrelevant to the ultimate question of whether the trial court abused its discretion in granting class certification. Rather, an examination of the record is necessary to determine whether the trial court provided any analysis or reasoning in support of its decision to either grant or deny class certification. Absent from the record before us is any evidence of the trial court's application of the Civ.R. 23 prerequisites or the trial court's rigorous analysis of these prerequisites.
 {¶ 32} Penn Central has raised several issues concerning class certification worthy of consideration. The trial court, however, merely stated that the class was certified without comment or explanation. As a result, we are unable to conclude, from either the record or the appealed judgment entry, whether the trial court carefully applied the class action requirements and conducted a rigorous analysis into whether they were satisfied. The minimal language of the judgment entry before us precludes us from determining if "the ruling was consistent with the sound exercise of discretion." Hamilton at 71. "This case presents complicated issues that require a more detailed analysis that includes the reasons supporting certification." Martin at ¶ 32. See, also, Nelson v. Money
(Sept. 13, 2001), 3rd Dist. Nos. 9-01-12 and 9-2000-41, 2001 WL 1048142, at 5.
 {¶ 33} Penn Central's first assignment of error has merit. Based on our analysis of the first assignment of error, it would be premature for us to address the remaining assignments of error. The judgment of the Trumbull County Court of Common Pleas is reversed, and this matter is remanded for further proceedings consistent with our opinion.
Ford, P.J., Rice, J., concur.