STAMMCO, L.L.C., D.B.A. THE POP SHOP, ET AL., APPELLEES, *v.* UNITED

TELEPHONE COMPANY OF OHIO, D.B.A. SPRINT, ET AL., APPELLANTS.

[Cite as *Stammco, L.L.C. v. United Tel. Co. of Ohio,*

**125 Ohio St.3d 91, 2010-Ohio-1042.]**

*Civ.R. 23 — Class-action certification — Class-action definition certified by trial*

*court does not allow class members to be readily identified.*

(No. 2008-1822 — Submitted October 21, 2009 — Decided March 24, 2010.)

APPEAL from the Court of Appeals for Fulton County,

No. F-07-024, 2008-Ohio-3845.

_____

**LANZINGER, J.**

**{¶ 1}** We accepted this discretionary appeal to consider two propositions concerning the definition of a class for purposes of a class action under Civ.R. 23. Appellants, United Telephone Company of Ohio and Sprint Nextel Corporation, ask us to hold that the trial court's class certification is improper under Civ.R. 23 and that the case cannot be maintained as a class action. Because the class definition does not allow the class members to be readily identified, we reverse the court of appeals' judgment and remand the case to the trial court so that it may clarify the class definition.

**Case Background**

**{¶ 2}** In June 2005, appellees, Stammco, L.L.C., d.b.a. The Pop Shop ("Stammco"), and its owners, Kent and Carrie Stamm, filed a complaint on behalf of themselves and all others similarly situated against United Telephone Company of Ohio, d.b.a. Sprint ("UTO"), and the Sprint Nextel Corporation ("Sprint"), who provided appellees with local and long-distance phone service. The complaint alleged that Stammco and other customers of UTO and Sprint had been damaged

by appellants' negligent acts and billing practices. Specifically, appellees alleged that UTO and Sprint had engaged in the practice of "cramming," or causing unauthorized charges to be placed on their customers' telephone bills. Appellees highlighted one incident, in which charges from a third party, Bizopia, appeared on Stammco's phone bill. Although Bizopia claimed that it had secured from a Stammco employee authorization to charge fees on the bill, Stammco claimed that the employee had explicitly told Bizopia that he did not have the authority to authorize such charges.

**{¶ 3}** Pursuant to Civ.R. 23, appellees filed a motion for certification of the following class: "All individuals, businesses or other entities in the State of Ohio who are or who were within the past four years, subscribers to local telephone service from United Telephone Company of Ohio d.b.a. Sprint and who were billed for charges on their local telephone bills by Sprint on behalf of third parties without their permission. Excluded from this class are defendants, their affiliates (including parents, subsidiaries, predecessors, successors, and any other entity or its affiliate which has a controlling interest), their current, former, and future employees, officers, directors, partners, members, indemnities, agents, attorneys and employees and their assigns and successors." The trial court granted the motion for class certification, named the Stamms and Stammco class representatives, and designated their counsel as counsel for the class.

**{¶ 4}** UTO and Sprint appealed the order certifying the class, asserting in part that the trial court failed to carefully apply the requirements for class certification under Civ.R. 23 and that, as a matter of law, no class could ever properly be certified based upon appellees' claims. After applying the factors in Civ.R. 23(A) and the four factors in Civ.R. 23(B)(3), the court of appeals held that the trial court had not abused its discretion in sustaining the motion to certify the class.

**{¶ 5}** After initially declining jurisdiction, *Stammco, L.L.C. v. United Tel. Co. of Ohio*, 120 Ohio St.3d 1488, 2009-Ohio-278, 900 N.E.2d 198, this court granted appellants' motion to reconsider and accepted discretionary jurisdiction over appellants' two propositions of law. *Stammco, L.L.C. v. United Tel. Co. of Ohio*, 121 Ohio St.3d 1430, 2009-Ohio-1296, 903 N.E.2d 327. The first states, "A plaintiff cannot define the class to include only individuals who were actually harmed." The second states, "A class action cannot be maintained when only some class members have been injured."

### Legal Analysis

**{¶ 6}** Civ.R. 23 sets forth the requirements for maintaining a class action. We have noted that there are seven requirements for a class action to be maintained under this rule: "(1) an identifiable class must exist and the definition of the class must be unambiguous; (2) the named representatives must be members of the class; (3) the class must be so numerous that joinder of all members is impracticable; (4) there must be questions of law or fact common to the class; (5) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; (6) the representative parties must fairly and adequately protect the interests of the class; and (7) one of the three Civ.R. 23(B) requirements must be met." *Hamilton v. Ohio Sav. Bank* (1998), 82 Ohio St.3d 67, 71, 694 N.E.2d 442, citing Civ.R. 23(A) and (B) and *Warner v. Waste Mgt., Inc.* (1988), 36 Ohio St. 3d 91, 521 N.E.2d 1091.

**{¶ 7}** In the present case, the trial judge and court of appeals determined that the class was proper under Civ.R. 23(B)(3), which provides that a class action may be maintained when "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." However, we have held that "[a]n identifiable class must exist before certification is

permissible. The definition of the class must be unambiguous." *Warner v. Waste Mgt., Inc.*, 36 Ohio St.3d 91, 521 N.E.2d 1091, paragraph two of the syllabus. "'[T]he requirement that there be a class will not be deemed satisfied unless the description of it is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.' 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure (2d Ed.1986) 120-121, Section 1760. Thus, the class definition must be precise enough 'to permit identification within a reasonable effort.' " *Hamilton v. Ohio Sav. Bank*, 82 Ohio St.3d at 71-72, 694 N.E.2d 442, quoting *Warner v. Waste Mgt.* at 96.

{¶ 8} In *Warner*, the plaintiffs filed a lawsuit in response to alleged activities in and around a dump site by the defendants, including Waste Management, Inc. The trial court certified a class consisting of people who "lived, worked, resided or owned real property within a five-mile radius of the Waste Management * * * site." Id. at 93. We held that a class defined to include all people who had ever worked within five miles of a specific site did not permit identification of its members with a reasonable effort and that the trial court had abused its discretion in certifying a class whose members were not readily identifiable. Id. at 96.

{¶ 9} On the other hand, in *Hamilton*, the trial court had denied plaintiffs' motion seeking certification of a class and subclasses consisting of mortgagors on whose residential loans Ohio Savings Bank calculated interest according to a certain method. *Hamilton*, 82 Ohio St.3d at 69, 72, 694 N.E.2d 442. We held that an identifiable class existed because the trial court needed only to look at the actions or practices of Ohio Savings Bank to determine whether an individual was a member of the class or subclasses. Id. at 73. We rejected Ohio Savings Bank's argument that the trial court would be required to conduct an individual inquiry into each prospective member's knowledge or understanding of

the method for calculating interest before ascertaining whether each person was a member of the proposed class. Because the bank was able to identify prospective class members with a reasonable effort, we concluded that there was an identifiable class. Id. at 72-73.

{¶ 10} In the case now before us, the class certified by the trial court does not have readily identifiable members and fails to meet the first requirement of Civ.R. 23—that its definition be unambiguous. The class definition includes customers who "were billed for charges on their local telephone bills by Sprint on behalf of third parties without their permission." This definition does not specify whether the customers were expected to give Sprint or the third parties authorization for billing, or whether the third parties were expected to obtain authorization from the customers for charges on the bill. In addition, in the phrase "their permission" in the class definition, it is unclear who the word "their" refers to. While one might assume that the word "their" refers to customers, it could be read to refer to either customers or third parties. Nor is it clear how authorization was to be accomplished—that is, whether written, verbal, or any other form of permission was necessary to authorize billing, and to whom it should be given, whether directly to Sprint or to the third party. Because the definition is ambiguous, we are unable to rule on appellants' objections to the class as currently defined.

{¶ 11} Furthermore, unlike in *Hamilton*, the trial court cannot readily identify prospective class members. In *Hamilton*, the court needed only to review the bank's records to determine whether a person was a member of the class. Here, however, the court must determine individually whether and how each prospective class member had authorized third-party charges on his or her phone bill. The trial court must examine testimony by the person claiming to be a member of the class and what most likely will be conflicting testimony by Sprint or the third party. For example, the court must determine whether Stammco's

employee had authority to authorize Bizopia's charges and whether the employee actually did so. Unlike the class in *Hamilton*, the class here cannot be ascertained merely by looking at appellants' records. While it appears that the class is intended to consist only of customers who received unauthorized charges, the class definition prevents the class members from being identified without expending more than a reasonable effort. We conclude that a class action cannot be maintained under Civ.R. 23 using the class definition as stated and that the trial court abused its discretion in certifying the class as so defined.

{¶ 12} Rather than attempt to redefine the class ourselves, we remand the case to the trial court to do so, for two reasons. First, the parties did not have the opportunity to present and argue the merits of alternative class definitions in their briefs before us. Second, the trial judge who conducts the class action and manages the case must be allowed to craft the definition with the parties. See *Marks v. C.P. Chem. Co., Inc.* (1987), 31 Ohio St.3d 200, 201, 31 OBR 398, 509 N.E.2d 1249 ("A trial court which routinely handles case-management problems is in the best position to analyze the difficulties which can be anticipated in litigation of class actions. It is at the trial level that decisions as to class definition and the scope of questions to be treated as class issues should be made"). In *Marks*, we noted that "[e]ven if the appellate court does find an abuse of discretion, it should not proceed to formulate the class or issue itself." Id. We thus conclude that it is proper for the trial court to redefine the class on remand.

{¶ 13} Because we remand the case to the trial court to clarify and complete the class definition, we do not reach appellants' arguments that the class is a fail-safe class, that individualized issues predominate the class, that the class is unmanageable, and that a class action is not suitable for the issues present in this case.

## Conclusion

{¶ 14} We hold that the class certified by the trial court as presently defined does not permit its members to be identified with a reasonable effort.  We therefore reverse the judgment and remand the cause to the trial court so that it may clarify the class definition in a manner consistent with this opinion.

Judgment reversed<br>and cause remanded.

LUNDBERG STRATTON, O'CONNOR, and O'DONNELL, JJ., concur.

MOYER, C.J., and CUPP, J., concur in part and dissent in part.

PFEIFER, J., dissents and would affirm the judgment of the court of appeals.

_____

**MOYER, C.J., concurring in part and dissenting in part.**

**Introduction**

{¶ 15} I agree with the majority that the class definition in this case is ambiguous and that the matter should be remanded in order that the trial court may redefine the class.  Therefore I concur in that portion of the majority opinion.  But I do not completely agree with the analysis used by the majority in reaching that determination because the majority strays into issues of predominance and superiority.  Therefore, I dissent from that portion of the majority opinion.

{¶ 16} In addition, I dissent from the majority opinion because I would address the appellants' propositions of law.  When the trial court redefines the class on remand, the court and the parties would benefit from a ruling on the issues raised in the propositions of law.  Judicial economy would be served by determining these issues now, rather than allowing the issues to lurk on remand and resurface in a new appeal.

{¶ 17} I would hold that the class in this case was ambiguously defined, but was not otherwise improper.  The trial court did not abuse its discretion when it determined that classwide issues are predominant in this case.

**Law and Analysis**

*The class definition is ambiguous*

{¶ 18} To properly establish a class under Civ.R. 23(A), the definition must define an identifiable group of persons in unambiguous terms. *Warner v. Waste Mgt. Inc.* (1988), 36 Ohio St.3d 91, 96, 521 N.E.2d 1091. " 'The test is whether the means is specified at the time of certification to determine whether a particular individual is a member of the class.' " *Hamilton v. Ohio Sav. Bank* (1998), 82 Ohio St.3d 67, 73, 694 N.E.2d 442, quoting *Planned Parenthood Assn. of Cincinnati, Inc. v. Project Jericho* (1990), 52 Ohio St.3d 56, 63, 556 N.E.2d 157.

{¶ 19} The class in this case is defined as follows: "All individuals, businesses or other entities in the State of Ohio who are or who were within the past four years, subscribers to local telephone service from United Telephone Company of Ohio d.b.a. Sprint who were billed for charges on their local telephone bills by Sprint on behalf of third parties without their permission. Excluded from this class are defendants, their affiliates (including parents, subsidiaries, predecessors, successors, and any other entity or its affiliate which has a controlling interest), their current, former, and future employees, officers, directors, partners, members, indemnities, agents, attorneys and employees and their assigns and successors."

{¶ 20} I agree that the class definition is ambiguous. The phrase "without their permission" is unclear. We cannot discern whether the customers/plaintiffs should have given permission to United Telephone Company of Ohio, d.b.a. Sprint, or to the third parties for the charges, and what form that permission should have taken. Thus, the definition fails to unambiguously specify the criteria by which to determine whether a particular person is a member of the class. I concur in that portion of the majority opinion. As an appellate court, we should refrain from endeavoring to define the class; that responsibility rests with the trial

8

court. *Marks v. C.P. Chem. Co.* (1987), 31 Ohio St.3d 200, 201, 31 OBR 398, 509 N.E.2d 1249. Therefore, I agree that the matter should be remanded to the trial court.

*The determination of ambiguity under Civ.R. 23(A) should not be confused with the determination of the predominance of classwide issues and the superiority of a class action under Civ.R. 23(B)(3)*

**{¶ 21}** In analyzing whether the class definition is ambiguous, the majority improperly includes issues relating to predominance and superiority under Civ.R. 23(B)(3). In particular, the majority explains that the class definition is ambiguous because, among other reasons, the trial court cannot "readily identify" class members. The majority states: "[T]he trial court cannot readily identify prospective class members. * * * Here, * * * the trial court must determine individually whether and how each prospective class member had authorized third-party charges on his or her phone bill. The trial court must examine testimony by the person claiming to be a member of the class and what most likely will be conflicting testimony by Sprint or the third party."[1] Majority opinion at ¶ 11.

**{¶ 22}** We have held that a class must be identifiable with "reasonable effort" and that an amorphous class is not "readily identifiable." *Warner v. Waste Mgt.*, 36 Ohio St.3d at 96, 521 N.E.2d 1091. For example, "[c]lasses such as 'all people active in the peace movement,' 'all people who have been or may be harassed by the police' and 'all poor people,' are too amorphous to permit identification within a reasonable effort and thus may not be certified." Id. The focus is on the definition itself—whether it is so abstract that it defies utilization.

---

1. This analysis closely mirrors the predominance analysis in *Brown v. SBC Communications, Inc.* (Feb. 4, 2009), S.D.Ill.. No. 05-cv-777-JPG, 2009 WL 260770. When determining whether questions common to the class predominated over individual questions, the court in *Brown* found, "[T]he Court will need to make individual determinations as to whether each proposed class member authorized the charges for which he was billed by defendants. The result will be multiple mini-trials, each requiring individual proofs." Id. at *3.

**{¶ 23}** Yet according to the majority's analysis of the issue, the trial court cannot "readily identify" class members if there are differing facts and legal issues among them.

**{¶ 24}** In *Hamilton*, we rejected a similar argument: "[E]ven when a class is appropriately defined by reference to defendant's conduct, it is nevertheless indefinite if separate adjudications are likely required to finally determine the action." *Hamilton*, 82 Ohio St.3d at 73, 694 N.E.2d 442. "The focus at this stage is on how the class is defined. 'The test is whether the means is specified at the time of certification to determine whether a particular individual is a member of the class.' *Planned Parenthood Assn. of Cincinnati, Inc. v. Project Jericho* (1990), 52 Ohio St.3d 56, 63, 556 N.E.2d 157, 165. The question as to whether there are differing factual and legal issues 'do[es] not enter into the analysis until the court begins to consider the Civ.R. 23(B)(3) requirement of predominance and superiority.' *Marks*, *supra*, 31 Ohio St.3d at 202, 31 OBR at 400, 509 N.E.2d at 1253." *Hamilton* at 73. In *Planned Parenthood Assn. v. Project Jericho*, we explained that "[t]he fact that members may be added or dropped during the course of the action is not controlling. The test is whether the means is specified at the time of certification to determine whether a particular individual is a member of the class." 52 Ohio St.3d at 63, 556 N.E.2d 157.

**{¶ 25}** Thus, we have already rejected an analysis that blends Civ.R. 23(A) concepts, such as a readily identifiable class, with Civ.R. 23(B)(3) considerations, such as the predominance of individualized issues. Yet the majority's decision today blurs the line by injecting issues relating to predominance and superiority under Civ.R. 23(B)(3) into the analysis of whether the class definition is readily identifiable under Civ.R. 23(A). This is no small point. The majority's analysis will not help the trial court to define the class on remand, nor will it help clarify the law regarding class actions. Instead, courts

may be caused to question whether our holding represents a new development in the law.

{¶ 26} In this case, class definition provided means to determine the class, which would have sufficed, were it not for the ambiguity. In order to determine class membership, the trial court would need to determine whether a putative class member (1) received a bill from United Telephone, (2) was assessed for third-party charges on that bill, (3) did not give appropriate authorization for the placement of those charges on that bill, and (4) is not among the exempted entities. The ambiguity lies in the phrase "without their permission"; the trial court lacks a method to determine the form and manner that the permission should have taken. But once that method is clarified, the trial court will possess sufficient means for determining class membership from the class definition.

*The trial court did not abuse its discretion when it found that classwide questions of law and fact predominate*

{¶ 27} Appellants contend in their second proposition of law that the class was improper under Civ.R. 23(B)(3) because of the predominance of issues affecting only individual members of the class.[2] Appellants argue that the class cannot be maintained, because the validity of third-party charges would have to be determined on an individualized, case-by-case basis. I would address this proposition of law and hold that the trial court did not abuse its discretion in determining that classwide questions predominate. The four federal court cases that appellants cite do not persuade me otherwise.

{¶ 28} Appellants' second proposition of law asks us to apply the long-settled law controlling class certification.

---

2. Appellants also assert in their merit brief that the class action is not manageable and is not superior to other methods of resolving disputes. However, these issues were not raised in the memorandum seeking jurisdiction or the motion for reconsideration and are therefore outside the scope of the propositions of law that we accepted for review.

**{¶ 29}** A trial court must "find[] that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members" before it certifies a class under Civ.R. 23(B)(3).

**{¶ 30}** We have held that "[t]he mere existence of different facts associated with the various members of a proposed class is not by itself a bar to certification of that class. If it were, then a great majority of motions for class certification would be denied. Civ.R. 23(B)(3) gives leeway in this regard and permits class certification where there are facts common to the class members." *In re Consol. Mtge. Satisfaction Cases*, 97 Ohio St.3d 465, 2002-Ohio-6720, 780 N.E.2d 556, ¶ 10.

**{¶ 31}** This case presents the type of claims appropriate for class-action treatment because it includes common questions regarding significant aspects of the case which "arise from standardized forms or routinized procedures." *Hamilton*, 82 Ohio St.3d at 84, 694 N.E.2d 442. As the court of appeals correctly observed, this case will require significant individualized determinations, but the majority of those determinations as well as classwide determinations can be made by examining appellants' computerized records.

**{¶ 32}** We have consistently held that a trial court has discretion in determining whether to certify a class under Civ.R. 23 and that that determination will not be overturned absent an abuse of discretion. "[A] trial judge is given broad discretion when deciding whether to certify a class action. * * * Moreover, 'absent a showing of abuse of discretion, a trial court's determination as to class certification will not be disturbed.' [*Schmidt v. Avco Corp.* (1984), 15 Ohio St.3d 310, 312-313, 15 OBR 439, 473 N.E.2d 822.] An abuse of discretion connotes more than a mere error of law or judgment, instead requiring a finding that the trial court's decision was unreasonable, arbitrary, or unconscionable." *In re Consol. Mtge. Satisfaction Cases*, 97 Ohio St.3d 465, 2002-Ohio-6720, 780 N.E.2d 556, ¶ 5.

{¶ 33} Appellants direct us to four decisions of federal courts, which they believe should guide the outcome of this case. I would hold that those cases are distinguishable and that, in any case, the trial court did not abuse its discretion when it determined that classwide issues were predominant in this case.

{¶ 34} In two of the cited cases, the entanglement of multiple causes of action and multiple statutes and a lack of standardized practices led the federal courts to hold that individualized issues predominated. *Sikes v. Teleline, Inc.* (C.A.11, 2002), 281 F.3d 1350; *Andrews v. AT&T* (C.A.11, 1996), 95 F.3d 1014.

{¶ 35} *Sikes* and *Andrews* are conceptually similar to *Schmidt v. Avco Corp.*, 15 Ohio St.3d at 314, 15 OBR 439, 473 N.E.2d 822, in which we held that "a class action would be inefficient and non-economical * * * because the claims raised involve noncommon issues that are either inextricably entangled with common issues or are too unwieldy to be handled adequately on a class action basis."

{¶ 36} We distinguished *Schmidt* from *Hamilton* by noting that the claims in *Schmidt* involved many "inextricably entangled" "noncommon issues." *Hamilton*, 82 Ohio St.3d at 83-84, 694 N.E.2d 442. In *Hamilton*, we explained that "class action treatment is appropriate where the claims arise from standardized forms or routinized procedures" despite the need for individualized proof on the issue of reliance. Id. at 84. *Sikes* and *Andrews* are distinguishable from this case because they involved a broader spectrum of claims and law and demanded an inquiry into the state of mind of each individual plaintiff. *Sikes* and *Andrews* do not aid in the disposition of this case.

{¶ 37} Appellants also direct us to *Stern v. Cingular Wireless Corp.* (Feb. 23, 2009), C.D.Cal. No. CV 05-8842, 2009 WL 481657, and *Brown v. SBC Communications, Inc.* (Feb. 4, 2009), S.D.Ill. No. 05-cv-777-JPG, 2009 WL 260770. While those cases are admittedly similar to this case, appellants have

failed to demonstrate that the trial court abused its discretion in certifying the class in this case.

{¶ 38} In *Stern*, the trial court refused to certify a class defined as cell-phone purchasers who claimed that certain services had been added to their plans without their permission. Id. at *2. The outcome in *Stern* was based on the plaintiffs' inability to offer any evidence that would establish on a classwide basis which services had been selected by the customer at the point of purchase and which had been provided. Id. at *7-8.

{¶ 39} Similarly, in *Brown*, the plaintiffs claimed that the defendant had placed unauthorized monthly fees on their local phone bills. 2009 WL 260770 at *1. The court refused to certify the class, finding that "the Court will need to make individual determinations as to whether each proposed class member authorized the charges for which he was billed by defendants. The result will be multiple mini-trials, each requiring individual proofs. Consequently, there will be no judicial economy realized from certifying this action as a class action." Id. at *3.

{¶ 40} Unlike in *Sikes* and *Brown*, the trial court in this case determined that a class action was appropriate. Relying on *Ritt v. Billy Blanks Ents.*, 171 Ohio App.3d 204, 2007-Ohio-1695, 870 N.E.2d 212, the trial court found that individualized issues did not predominate and that the policies behind class actions supported allowing the class in this case. Although the unpublished district court cases *Stern* and *Brown* are somewhat similar to this case, that fact does not automatically mean that the trial court abused its discretion in certifying the class.

{¶ 41} Each class action is different and each trial court will decide issues of predominance based upon the facts present in the case before it. Thus, one court may appropriately certify a class, even if it resembles one that was not certified by another court under Civ.R. 23(B), when the circumstances, claims,

issues, and evidence alter the analysis. Furthermore, the determination will be upheld absent an abuse of discretion, so a trial court may certify a diverse range of classes—even classes similar to those that have been rejected in the past—and that determination will not be reversed based upon a mere error of law or judgment. *In re Consol. Mtge. Satisfaction Cases*, 97 Ohio St.3d 465, 2002-Ohio-6720, 780 N.E.2d 556, ¶ 5.

*The defined class is not a "fail-safe class"*

**{¶ 42}** In their first proposition of law, appellants urge us to find that the class in this case is a "fail-safe class" and that it is therefore defectively defined.[3] "Fail-safe class" refers to a class definition that is improper because the members of the class cannot be known until a determination has been made as to the merits of the claim or the liability of the opposing party. *Adashunas v. Negley* (C.A.7, 1980), 626 F.2d 600, 603. Thus, a fail-safe class "put[s] the cart before the horse." *Mims v. Stewart Title Guar. Co.* (N.D.Tex.2008), 254 F.R.D. 482, 486.

**{¶ 43}** We can resolve this issue by applying the holding in *Ojalvo v. Bd. of Trustees of Ohio State Univ.* (1984), 12 Ohio St.3d 230, 233, 12 OBR 313, 466 N.E.2d 875, that a court cannot reach the merits of a case at the class-certification stage. Here, the class definition contains the phrase "individuals * * * who were * * * billed for charges on their local telephone bills * * * on behalf of third parties without their permission." Appellants contend that this phrase prohibits class certification because class membership cannot be determined until a finding on the issue of liability has been made. In so contending, appellants appear to concede that the lack of permission equates automatically with liability, but this is not the case. Defining the class in this way does not require a determination on

---

3. Appellants' first proposition of law is phrased: "A plaintiff cannot define the class to include only individuals who were actually harmed." Appellants' arguments under this proposition of law deal predominantly with the notion of a "fail-safe class." The remainder of appellants' arguments under the first proposition of law deal mainly with alleged errors of the findings that a trial court must make in certifying a class and are not germane to the resolution of the fail-safe-class issue that we accepted for review.

the issue of liability or the merits of the underlying causes, because finding a class of customers who were assessed charges that they had not authorized does not require a determination that appellants are liable to the customers.[4]

{¶ 44} In sum, determination of membership in the class in this case does not depend on a predetermination of the merits of the case or liability of the appellants.

### Conclusion

{¶ 45} For the foregoing reasons, I concur in part and dissent in part.

CUPP, J., concurs in the foregoing opinion.

_____

Murray & Murray Co., L.P.A., Dennis E. Murray Sr., and Donna J. Evans, for appellees.

Baker & Hostetler, L.L.P., Michael K. Farrell, Thomas D. Warren, Karl Fanter, and John B. Lewis, for appellants.

Aneel L. Chablani, Andrew D. Neuhauser, and Stanley A. Hirtle; Burdge Law Office Co., L.P.A., and Ronald L. Burdge; and Stephen Gardner, urging affirmance for amici curiae Advocates for Basic Legal Equality, Inc., and National Association of Consumer Advocates.

Linda S. Woggon, urging reversal for amicus curiae Ohio Chamber of Commerce.

_____

4. Furthermore, appellants contend that they are not liable for the third-party-billing practices even if a charge was unauthorized. In their notice of appeal, appellants state that "United Telephone's practice of passing third-party charges along to the customer is a neutral one. Most charges are unquestionably legitimate, and if one were proved ultimately to be unauthorized, it would be as a result of the conduct of a third party, not United Telephone." In appellants' merit brief, they explain that even if plaintiffs could prove that the third-party charges were unauthorized, liability would still not automatically attach: "Even class members who could prove [that they received and paid a third-party charge for a service that they did not request or use] would still have to prove that their payment of the charge was caused by United Telephone and not by their own conduct or the conduct of a third-party service provider."